**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**CHARLES C.,**

     **Plaintiff,**

**vs.**                                 **CIVIL ACTION NO. 3:23-CV-00740**

**MARTIN J. O'MALLEY,**
**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

     This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered November 17, 2023 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Judgment on the Pleadings along with his Brief in Support of Motion for Judgment on the Pleadings, and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 5, 6, 7)

     Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for entry of an award for benefits, or alternatively, for remand (ECF No. 5); **GRANT** the Defendant's request to affirm the decision of the Commissioner (ECF No. 7); **AFFIRM** the final

decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

## Procedural History

The Plaintiff protectively filed his application for benefits on November 18, 2020, alleging disability since March 24, 2019 due to osteoarthritis in multiple joints, severe depression, anxiety and panic attacks, type II diabetes, hypertension and hyperlipidemia, obstructive sleep apnea, a right ankle replacement, diverticulitis, chronic fatigue, insomnia, chronic back pain, acute bronchitis, a history of hemochromatosis, deep vein thrombosis in legs, GERD, a hernia, and obesity (Tr. at 17, 242-244, 273). His claim was denied at the initial and reconsideration levels of review (Tr. at 17, 93-110, 113-120). Thereafter, the Plaintiff requested a hearing (Tr. at 143).

An administrative hearing was held on April 4, 2022 before the Honorable Michele Stolls, Administrative Law Judge ("ALJ") (Tr. at 37-71). On April 26, 2022, the ALJ entered an unfavorable decision. (Tr. at 14-36) Thereafter, the Plaintiff submitted a request for review (Tr. at 212-241), however, on September 22, 2023, the Appeals Council denied the Plaintiff's request (Tr. at 1-6), rendering the ALJ's decision a final decision.

On November 16, 2023, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed a Motion for Judgment on the Pleadings along with a Brief in Support of Motion for Judgment on the Pleadings (ECF Nos. 5, 6), in response, the Defendant filed a Brief in Support of Defendant's Decision (ECF No. 7). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 50 years old as of the alleged onset date, and considered a "person closely approaching advanced age" throughout the underlying proceedings. See 20 C.F.R. § 404.1563(d). (Tr. at 30) He has a high school education, and worked nearly thirty years as a deck hand for Marathon (Tr. at 30, 274).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant filing for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. § 404.1520.  If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. <u>Id</u>. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c). This Section provides as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination

and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff met the requirements for insured worker status through December 31, 2024. (Tr. at 19, Finding No. 1) Next, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since March 24, 2019, the alleged onset date. (Id., Finding No. 2) At the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: morbid obesity; malnutrition-related diabetes mellitus with bilateral neuropathy; hereditary hemochromatosis; arthritis of the right ankle; osteochondritis dissecans of the talus of the right ankle; history of deep vein thrombosis of the lower extremities; degenerative disc disease of the lumbar spine; depressed bipolar I disorder; depressive disorder/major depressive disorder; mood disorder; generalized anxiety disorder/anxiety state; panic disorder; psychophysiologic insomnia/insomnia; and hypersomnia with sleep apnea. (Id., Finding No. 3)

At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21, Finding No. 4) The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work:

except he is limited to occupations that require no more than occasional postural maneuvers, such as stooping, or kneeling, or crouching, or crawling, and climbing on ramps and stairs, but must avoid occupations that require climbing on ladders, ropes, or scaffolds. He is limited to occupations that require no more than

6

occasional pushing and pulling with the upper extremities to include the operations of hand levers. He must avoid concentrated prolonged exposure to temperature extremes, vibration, extreme dampness and humidity or exposure to hazards such as dangerous machinery and unprotected heights. He is limited to simple routine repetitive work, generally described as unskilled, with no more than a specific vocational preparation (SVP) of two and that is low stress, defined as only occasional decision making required and only occasional changes in the work setting.

 (Tr. at 23, Finding No. 5)

At step four, the ALJ found that the Plaintiff is incapable of performing any past relevant work. (Tr. at 29, Finding No. 6) In addition to his age, education, the immateriality of the transferability of job skills, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that the Plaintiff can perform. (Tr. at 30, Finding Nos. 7-10) Finally, the ALJ determined that the Plaintiff had not been under a disability from March 24, 2019 through the date of the decision. (Tr. at 31, Finding No. 11)

**Plaintiff's Challenges to the Commissioner's Decision**

In support of his appeal, the Plaintiff asserts that the ALJ failed to fully develop the medical evidence regarding the Plaintiff's impairments, specifically, his testimony concerning his multiple physical and mental limitations precluding all work, plus the ALJ did not consider the Plaintiff's diverticulitis, which caused him to have to go to the bathroom two or three times per day, and spending fifteen to twenty minutes in the bathroom. (ECF No. 6 at 13-16) Also, the Plaintiff contends the ALJ "completely ignored" the Plaintiff's testimony and medical documentation of his diverticulitis, and failed to consider the combined effects of his impairments, which warrant a finding of disability. (Id. at 16-17) The ALJ also failed to consider the medical records of the Plaintiff's longtime treating physicians, Mark Workman, M.D., and Sara Sertan, Psy.D.; the ALJ

also substituted his own opinion for those of the Plaintiff's treating providers and instead relied upon the opinions offered by non-treating, and partial record-reviewing state physicians (Id. at 17). The Plaintiff argues the final decision is not supported by substantial evidence, and that this Court should find the Plaintiff was disabled, or alternatively, to remand so that her mental and physical impairments can be fully developed allowing an accurate hypothetical question to be posed to the vocational expert concerning the Plaintiff's limitations. (Id. at 17-18)

In response, the Defendant points out that the Plaintiff does not identify what the ALJ failed to develop or reference any relevant medical evidence the ALJ allegedly failed to consider, only offering a conclusory statement as his argument, a practice this Court has previously rejected.[1] (ECF No. 7 at 10-11) However, in this case, the ALJ did properly develop the record and considered all relevant evidence in the RFC determination. (Id. at 11-15) The Defendant also argues that the ALJ explained why he found Dr. Workman's opinion was unpersuasive, noting it was inconsistent with his own treatment records and the other evidence of record, ultimately finding the Plaintiff remained capable of a range of light work. (Id. at 15-16) The Defendant also argues that while the Plaintiff lists numerous diagnoses and allegations as his argument that he is disabled, he fails to show how they caused a particular functional loss. (Id. at 16) The Defendant contends that the Plaintiff's argument that the ALJ failed to develop the record is meritless, as the ALJ considered the entire record, neither the Plaintiff nor his counsel requested any assistance in developing the record, and even when asked by the ALJ directly, the Plaintiff's attorney stated no additional evidence was missing. (Id. at 16-17) As for the Plaintiff's argument that the ALJ failed

---

[1] Citing *Hensley v Kijakazi*, No. 3:21-cv-00178, 2021 WL 5871542, at *13-14 (S.D.W. Va. Nov. 23, 2021), *report and recommendation adopted*, 2021 WL 5867126, at *1 (S.D.W. Va. Dec. 10, 2021).

to consider the combination of impairments, this, too, is an undeveloped argument that this Court rejected for being conclusory and without any citation to the record or any supporting facts. (Id. at 17-19) At step three in the sequential evaluation, it was the Plaintiff's burden to prove he met Listing requirements, nevertheless, the ALJ addressed the relevant Listings, and properly found that none of the Plaintiff's impairments in combination met Listing requirements. (Id. at 19-20) Finally, the Defendant states that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 20)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record pertaining to the Plaintiff's arguments and discusses it below.

Physical Impairments:

The Plaintiff has a history of right ankle pain (Tr. at 370, 381). In June 2014, x-rays of his right ankle showed some low density in the talar dome medially and small osteophytes over the anterior tibiotalar joint and at the talonavicular joint (Tr. at 350). He was scheduled to have right ankle replacement surgery, but he was not able to do so due to elevated blood sugars (Tr. at 370). The Plaintiff also has a history of uncontrolled diabetes mellitus (DM) without complications (Tr. at 369, 381, 727). At times, the Plaintiff's DM was thought to be caused by hemochromatosis (Tr. at 403). He has a history of hereditary hemochromatosis that was confirmed by liver biopsy (Tr. at 369, 437), and required frequent phlebotomies to remove blood (Tr. at 384, 400, 715).

Although the Plaintiff generally denied symptoms of neuropathy at multiple visits with his

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

providers over the course of his treatment history (See, e.g., Tr. at 530, 554, 599), he did report numbness in his left hand and abnormal sensation at an April 2021 appointment (Tr. at 611, 614). The same month, Electromyography ("EMG") and nerve conduction studies of his bilateral upper extremities were abnormal (Tr. at 631). He also has a history of pain and swelling in his legs due to deep vein thrombosis (DVT), but anticoagulation medication appeared to be effective in controlling his symptoms (Tr. at 374, 594-595). In October 2018, an ultrasound of the Plaintiff's left leg showed thrombus in the greater saphenous vein below the knee (Tr. at 357). In August 2019, an ultrasound of his right leg showed an occlusive thrombus within the right popliteal vein extending into the proximal calf veins (Tr. at 366).

Generally, the Plaintiff has also consistently presented to providers with a normal gait and station, no extremity edema, intact or normal sensation, normal movement in all extremities, and normal motor strength (Tr. at 371, 374, 382, 403, 452, 600, 685, 713). This includes the Plaintiff's treating provider, Mark Workman, M.D., who noted in his treatment records that the Plaintiff had normal movement in all extremities, intact sensation, and normal motor strength (Tr. at 371, 374, 382).

The Plaintiff has a history of hypersomnia with sleep apnea (Tr. at 369). In August 2021, a sleep study showed bradycardia and a repeat sleep study with trial nasal CPAP was recommended (Tr. at 725). Symptoms associated with the Plaintiff's other impairments were complicated by obesity. His BMI ranged from approximately 35.31 to 37.54 (Tr. at 722).

The Plaintiff underwent a consultative internal medicine examination with Patsy Jackson, APRN, FNP-C, in March 2021 as part of the disability application process (Tr. at 594-597). He reported a history of DM with high blood sugar, sleep apnea with daytime sleepiness and sleep

disturbance, lower back and right ankle pain, and hemochromatosis requiring plasma withdrawals (Tr. at 595). He also reported the history of DVT that had not recurred since starting anticoagulation medication (Tr. at 594-595). Upon examination, he had a full range of motion in his extremities and back, normal straight leg raises, a normal gait without an assistance device, and full muscle strength, included grip strength (Tr. at 596). He could walk on his toes and heels and complete knee squats without difficulty, but he was unable to complete a tandem walk due to imbalance (Tr. at 596-597). He could perform fine manipulation and gross dexterous movements with each hand (Tr. at 597). The consultative examiner noted that x-rays of his right ankle showed preserved joint spaces, and x-rays of his lumbosacral spine showed mild multilevel spondylosis, but disc spaces were preserved, and there was no scoliosis or compression of vertebral bodies (Tr. at 596-597).

Mental Impairments:

The Plaintiff's mental health diagnoses included depressive disorder, anxiety, psychophysiological insomnia, generalized anxiety disorder, and bipolar disorder (Tr. at 369, 638). He had associated symptoms including anger issues, nightmares, sleep disturbances, panic attacks, and concentration deficits (Tr. at 637, 643, 649, 741, 744). The Plaintiff received ongoing treatment that included medication management and psychotherapy (Tr. at 477, 637, 729). His treatment record indicated some degree of symptomatic benefit with treatment, with his symptoms being characterized as stable or well controlled at times (Tr. at 375, 378, 637). The Plaintiff had largely normal findings on mental status examination, including a normal, good, euthymic, or appropriate mood and affect (Tr. at 600, 614, 637, 686, 727, 749, 767).

The Plaintiff underwent a consultative psychological examination with Tara Bias, M.A., in

March 2021 as part of the disability application process (Tr. at 587-592). He reported issues with panic attacks, depression, anxiety, anger, sadness, poor sleep, and concentration deficits (Tr. at 588). He reported ongoing treatment involving therapy and medication (Tr. at 587-588). After administering a mental status examination, the Ms. Bias diagnosed the Plaintiff with major depressive disorder and panic disorder and noted that during the evaluation the Plaintiff was cooperative with normal judgment, good insight, normal memory, mildly impaired concentration, and normal persistence (Tr. at 589-590).

  <u>Prior Administrative Medical Findings and Opinion Evidence:</u>

  At the initial and reconsideration level reviews, the State agency medical consultants, Narendra Parikshak, M.D., and Rabah Boukhemis, M.D., found that the Plaintiff could perform a reduced range of medium work (Tr. at 104-107, 113-116). Dr. Parikshak concluded that the Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and had no pushing or pulling limitations (Tr. at 105). Dr. Parikshak noted that the Plaintiff showed some imbalance during his physical consultative examination leading to postural limitations, including occasionally climbing ramps/stairs, never climbing ladders/ropes/scaffolds, and occasionally crawling, and further noted certain environmental limitations, including avoiding concentrated exposure to extreme cold, wetness, vibration, and hazards, but also concluded that the Plaintiff's physical symptoms, and their severity, were only partially consistent with the medical evidence of record (Tr. at 105-107). Dr. Boukhemis noted similar findings and concluded that new evidence since the initial determination was "not significant enough to alter the initial" findings (Tr. at 113-116).

State agency psychological consultants Jeff Harlow, Ph.D., and Jeff Boggess, Ph.D., determined that the Plaintiff's mental impairments were non-severe (Tr. at 101-102, 117). More specifically, Dr. Harlow noted the diagnoses of depression, bipolar, and anxiety, but concluded that the Plaintiff had no limitations in the areas of understanding, remembering, or applying information and adapting or managing oneself, as well as only mild limitations in interacting with others and concentration, persistence, or maintaining pace (Tr. at 101). Dr. Boggess concurred with those findings, concluding that the evidence was consistent with the initial review findings (Tr. at 117).

On March 6, 2019, Dr. Workman provided a letter regarding the Plaintiff, asserting that the Plaintiff has "been totally disabled during the past year and unable to work" and that he "remains permanently disabled at this time." (Tr. at 385)

In February 2020, Dr. Workman provided a one-page checkbox form opining that the Plaintiff was limited to less than sedentary work by noting exertional limitations that included only occasionally lifting/carrying ten pounds, frequently lifting/carrying less than ten pounds, standing/walking less than two hours in a workday, sitting no more than two hours in a workday, alternating sitting and standing every two hours, and limited pushing or pulling in both upper and lower extremities (Tr. at 387). Dr. Workman's opinion contained no supporting explanations and did not offer any opinions on postural, manipulative, communicative, or environmental limitations, only stating "it is my opinion that he has been disabled since March 2018" (Id.). Dr. Workman also provided a letter dated February 13, 2020 concerning the Plaintiff, noting that he "is a long-term patient" and has "multiple medical problems" including: "poorly controlled diabetes mellitus type 2 along with hemochromatosis" requiring "frequent phlebotomies to remove blood";

"markedly elevated" blood sugars that "fluctuate widely"; chronic ankle pain from a previous fracture causing him difficulty with ambulation; and severe depression causing him frequent mood swings and a very difficult time with concentration. (Tr. at 384) Due to these issues, Dr. Workman determined the Plaintiff "is permanently and totally disabled." (Id.)

In June 2021, Sara Sertan, Psy.D., provided a checkbox form, opining that the Plaintiff was markedly limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday without interruptions from psychologically-based symptoms, appropriately interact with the public, get along with coworkers or peers, respond appropriately to changes in the work setting, and travel to unfamiliar places or use public transportation (Tr. at 676-677). She indicated that the Plaintiff's impairments or treatment would cause him to be absent from work about four days per month. (Tr. at 677) Dr. Sertan gave no explanation in support of these conclusions, although she opined that the Plaintiff "has been disabled since March 2018." (Id.).

**The Administrative Hearing**

The Plaintiff's Testimony:

The Plaintiff testified that he last worked in 2018, ending due to "some restructuring", but also because he "started having panic attacks and real bad nerves with it." (Tr. at 47) The Plaintiff explained that he could not work due to anxiety, worsening of his right ankle, and difficulty with prolonged walking (Tr. at 48). He mentioned difficulty with physical activities due to chronic back and joint pain (Tr. at 56). Plaintiff explained that he could not have partial ankle replacement done until his blood sugar was under control (Tr. 53, 55). He also reported a history of deep vein thrombosis with blood clotting and swelling in his legs, requiring him to vary between sitting and

14

standing frequently (Tr. at 57-58). Overall, he estimated that he could only sit for fifteen to thirty minutes, stand for thirty minutes, walk 100 yards, and lift five to ten pounds (Tr. at 52-53, 55-56). The Plaintiff also mentioned that due to diverticulitis, he would need to use the bathroom, "unforeseen", but he "handle[d] that pretty good; he uses the bathroom "[t]wo or three times in a week", though he would spend between fifteen and twenty minutes in the bathroom (Tr. at 59). His blood sugars and diabetes also make him very thirsty, and he drinks a lot of water, which causes him to use the bathroom two or three or more times per day (Tr. at 59-60).

As to mental impairments, he described panic attacks, concentration deficits, and difficulty following conversations (Tr. at 54, 62). The Plaintiff takes medication, Klonopin, for his panic attacks, and while it helps some, it makes him drowsy and causes difficulties in concentration or dealing with people (Tr. at 55, 57); he also stated that Remeron makes him drowsy (Tr. at 57). He takes pain medication as well, Zanaflex, which also makes him drowsy, and he uses it mainly to help him sleep (Id.). As to daily activities, the Plaintiff testified he fished and hunted within the prior year, traveled to the beach, drove, went to restaurants, socialized with friends, and spent time at the Masonic Lodge (Tr. at 48-50).

The Vocational Expert's ("VE") Testimony:

After listening to the Plaintiff's testimony, the VE determined that an individual with the Plaintiff's work history, education and with the controlling RFC, *supra*, and while the individual could not perform the past relevant work, he can perform the work of a price marker, a stock checker, and a non-postal mail clerk (Tr. at 65-66) The VE also testified that there are other jobs that the individual can perform besides those identified (Tr. at 66). In response to questioning by the Plaintiff's attorney, the VE opined that if the hypothetical individual was limited to frequently

15

lifting and carrying less than ten pounds; standing and/or walking less than two hours; sitting for two hours with the alternate sitting and standing of moving from sitting to standing every two hours, all jobs the VE previously identified would be eliminated (Tr. at 69). The VE also testified that if the individual had marked limitations as those set forth in Exhibit 18F (Tr. at 674-677), then all jobs would be eliminated (Id.).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claims is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

The Duty to Develop the Evidence:

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4ᵗʰ Cir. 1986). The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim in order to determine if it met the requirements in the listings of impairments amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is the Plaintiff's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. § 404.1512(a)("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled." Thus, the Plaintiff is responsible for providing medical evidence to the Commissioner showing that he has an impairment, further, the Regulations are clear that this responsibility is ongoing at each level of the administrative review process. Id. The Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to develop the record fully and fairly, he is not required to act as the Plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-831 (8th Cir. 1994). In this case, the Plaintiff was represented by counsel and the ALJ has the right to assume that the Plaintiff's counsel was presenting the strongest case for benefits. See Laney v. Astrue, 2011 WL 11889, at *11 (S.D.W. Va. Jan. 4, 2011)(Eifert, M.J.)(citing Nichols v. Astrue, 2009 WL 2512417, at *4 (7th Cir. 2009). An ALJ's duty to develop the record does not require him to make specific inquiries into the Plaintiff's treatment modalities or search for cumulative evidence; her duty is to obtain sufficient evidence upon which he can render an informed decision. Id. (internal citations omitted).

Furthermore, the Plaintiff bears the burden of establishing a *prima facie* entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, the Plaintiff "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

Regarding the Plaintiff's allegation that the ALJ failed to develop the record with respect to his diverticulitis, the Plaintiff identified no inadequacies or gaps in the record that the ALJ should have developed. The mere mention of this diagnosis is insufficient to warrant remand – but more importantly, the Plaintiff must demonstrate a related functional loss. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). The Plaintiff does not do this here, and his argument on this point lacks merit: the ALJ acknowledged that the Plaintiff alleged he was disabled due to a myriad of

18

medical problems, even mentioning diverticulitis as one of the several alleged impairments (Tr. at 24, 280-287, 307-314).[3] Additionally, from the undersigned's review of the medical record, diverticulitis is mentioned once in preparation for a colonoscopy in June 2018; significantly, the note described the Plaintiff's present illness as "asymptomatic" (Tr. at 359). From the overall record, the Plaintiff himself provided more insight into his diverticulitis during the administrative hearing, testifying that in a "typical week" it caused him to go to the restroom two or three times, ostensibly lasting between fifteen and twenty minutes each trip. (Tr. at 59) The Plaintiff also testified that despite not knowing when he needs to go to the bathroom, he "handle[d] that pretty good." (Id.) In short, the record before the ALJ regarding the Plaintiff's diverticulitis is especially scant, but even by the Plaintiff's own statements, it does not appear to have been a significant medical problem warranting further development by the ALJ.[4] Moreover, when asked by the ALJ at the start of the administrative hearing if there was any "missing evidence", the Plaintiff's attorney responded in the negative (Tr. at 43).[5]

---

[3] In addition to his hearing testimony, the ALJ cited the Plaintiff's Adult Function Reports submitted in February 2021 and August 2021. Notably, the Plaintiff provided no specific symptoms or problems associated with diverticulitis. Thus, to the extent the Plaintiff has also argued that the ALJ "completely ignored the claimant's testimony and medical documentation of his diverticulitis" (ECF No. 6 at 16), this argument also lacks merit.

[4] As noted *supra*, numerous medical records that predate the Plaintiff's alleged onset date were exhibited to the ALJ's written decision (See Tr. at 32-36). "Absent evidence to the contrary, it must be presumed that the ALJ reviewed all of the materials in the record and presented by the [Claimant]." Turner v. Berryhill, 2017 WL 2805498, at *4 (N.D.W. Va. June 28, 2017)(citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision." Reid v. Commissioner of Social Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*).

[5] To the extent the Plaintiff contends further evidentiary development via consultative examination is necessary to flesh out additional medical evidence, the Regulations are clear that when the evidence is deemed sufficient in order to render a disability determination, an adjudicator need not order a consultative examination, and that such decisions are within the ALJ's discretion. See 20 C.F.R. §§ 404.1516, 1519a, 1519b.

Regarding the Plaintiff's argument that the ALJ also failed to develop the record as it related to all his other alleged impairments, again, the Plaintiff provides zero insight or identifies any evidence the ALJ allegedly omitted or neglected to pursue. The Plaintiff only gives a conclusory statement without the benefit of any specifics, and such arguments have been rejected by this Court. See *Hensley v. Kijakazi*, No. 3:21-cv-00178, 2021 WL 5871542, at *13-14 (S.D.W. Va. Nov. 23, 2021), *report and recommendation adopted*, 2021 WL 5867126, at *1 (S.D.W. Va. Dec. 10, 2021).

In short, the Plaintiff has failed to demonstrate any paucity in the evidence that would have warranted further development of the record. Accordingly, the undersigned **FINDS** that the Plaintiff's contention that the ALJ erred by failing to develop the record is without merit.

Consideration of the Combined Effect of Impairments:

The other alleged error the Plaintiff has asserted here concerns the ALJ's failure to consider whether the combination of his impairments met a listing – similar to his argument that the ALJ did not develop the record, the Plaintiff offers nothing but a conclusory statement that the combined impairments render him totally disabled – without any documented support or specifics. As noted *supra*, the Plaintiff has the burden of proof at step three in the disability determination process, however, since he failed to identify how the ALJ erred in this regard, he has similarly failed to assert a specific challenge sufficient to trigger judicial review. Thus, regarding this particular alleged error, the Plaintiff has waived this argument. Erline Co. S.A. v. Johnson, 440 F.3d 647, 653 n.7 (4th Cir. 2006)(a "[c]onclusory remark is insufficient to raise on appeal any merits-based challenge"); accord Sedghi v. PatchLink Corp., 440 Fed.Appx. 165, 167 (4th Cir. 2011)("By advancing only a conclusory argument, Sedghi has likely waived the issue.").

While the Plaintiff does not specify which impairments or how their combining effects[6] warrant a disability finding, he argues that the ALJ also

> failed to fully develop and consider the plaintiff's mental residual functional capacity assessment, which is Exhibit 18F, pretty well precludes any and all substantial gainful activity, along with, 6F, which is a residual physical capacity evaluation by his treating physician, Dr. Mark Workman, of many years (TR 70).

(ECF No. 6 at 16) As noted *supra*, the Plaintiff asserts that the ALJ failed to consider the medical records provided by his treating providers, namely Dr. Workman (of Three Rivers Medical Center) and Dr. Sertan (of Huntington Behavioral Health), and impermissibly substituted their opinions with the ALJ's own. (Id. at 17)

As an initial matter, with respect to the Plaintiff's contention that the ALJ failed to consider the medical records from his treating providers, the undersigned **FINDS** this argument utterly lacks merit: first, the written decision is replete with references and specific citations to the Plaintiff's treating providers' records (Tr. at 20-23, 25-29). Moreover, as noted in footnote 4, *supra*, this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid, 769 F.3d at 865; see also Call v. Berryhill, Civil Action No. 2:17-CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018). In this case, the ALJ stated that she considered all the evidence of record. (See Tr. at 18, 24 ("After careful consideration of all the evidence. . ."); Tr. at 19, 23 ("After careful consideration of the entire record. . ."). Having so stated, this court should "take her at her word." Reid, 769 F.3d at 865. Furthermore, this Court

---

[6] Ostensibly bootstrapping his argument concerning the ALJ's alleged failure to develop the record, the Plaintiff merely lists the impairments the ALJ deemed severe (See Tr. at 19, Finding No. 3), plus additional impairments he alleged in his application for benefits, which includes: diverticulitis; GERD; and hernia. (ECF No. 6 at 13, 14)

has previously recognized that when a plaintiff merely makes a broad reference to nearly the entire medical record, he does not assert any specific challenge to the ALJ's consideration of the evidence. See *Williams v. Saul*, No. 3:18-cv-01282, 2019 WL 3756392, at *13 (S.D.W. Va. July 17, 2019), *report and recommendation adopted*, 2019 WL 3759805 (S.D.W. Va. Aug. 7, 2019) ("Claimant does not identify any error in the ALJ's consideration of the medical opinions, and her generalization that the ALJ failed to consider the opinions, without any reference to any specific error by the ALJ, fails to carry any weight.").

In any event, regarding an adjudicator's duty to consider the combined effects of a claimant's alleged impairments, the Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

See 20 C.F.R. § 404.1523(c). When confronted with a combination of impairments, an adjudicator must not only acknowledge "the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The Fourth Circuit has held that the ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. In short, the ALJ must analyze the cumulative or synergistic effect that the various impairments have on a claimant's ability to work. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." See 20 C.F.R. § 404.1525(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To qualify for benefits, the Plaintiff must show that his combination of impairments is "equivalent" to a listed impairment, and he "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." See Id. at 531.  In short, the Plaintiff must meet all, not just some, of the criteria for a listing to apply. Id. at 530.

As noted *supra*, the ALJ found that despite the Plaintiff's severe impairments, their combined effects failed to meet Listing requirements at the third step of the sequential evaluation process. (Tr. at 21-23)

The ALJ first evaluated his degenerative disc disease of the lumbar spine under Section 1.15, noting no compromise of a nerve root(s), no spinal stenosis resulting in comprise of the cauda equina under Section 1.16, there has been no reconstructive surgery or other surgical intervention meeting Section 1.17 requirements, and no abnormality of the major joint(s) in any extremity, as the Plaintiff does not require an assistive device involving the use of both hands or had an inability to use either of his upper extremities to independently initiate, sustain, and complete work-related activities using fine and gross movements that would meet Section 1.18 criteria. (Tr. at 21)

The ALJ then determined that the Plaintiff's diabetes mellitus did not meet Section 9.00(B)(5) and Social Security Ruling (SSR) 14-2p criteria, noting in particular that Listing 11.14 is not met because the record did not show the Plaintiff had persistent peripheral neuropathies with disorganization of motor function despite prescribed treatment, or marked limitations in physical

23

functioning with marked limitation in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself. (Id.)

Regarding the Plaintiff's obesity, the ALJ recognized while there is no Listing criteria for this severe impairment, she considered it under SSR 19-2p, which requires a "consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity because obesity may have an adverse impact upon co-existing impairments." (Tr. at 21-22) The ALJ explicitly stated she took those considerations into account in reaching her conclusions at the second through the fifth steps of the sequential evaluation process, observing that "no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity." (Tr. at 22)

The ALJ then examined the evidence relating to the Plaintiff's mental impairments under Listings 12.04 and 12.06, also finding that his mental impairments, either singly or in combination, failed to meet or medically equal Listing criteria: in understanding, remembering or applying information, the ALJ determined the Plaintiff only had a mild limitation. (Tr. at 22) In support of this conclusion, the ALJ noted the findings from the March 2021 consultative psychological evaluation (Tr. at 589), and also noted the other evidence of record showed the Plaintiff was assessed "with good or normal memory and a logical, relevant, normal, linear, and goal directed thought process or thought form" (Tr. at 22, citing Tr. at 604, 637, 650, 672, 727, 732).[7] In

---

[7] Of interest here, the ALJ is referencing a medical record dated April 14, 2021 from Marshall Internal Medicine Kidney and Hypertension, as well as numerous records from the Plaintiff's treating provider, Dr. Sertan, with

interacting with others, the ALJ found the Plaintiff had only a mild limitation, again noting the findings by the consultative psychological examiner (Tr. at 588, 590, 589), and also noted the other evidence of record that showed he maintained good eye contact, established rapport easily, and was described as engaged, pleasant and cooperative (Tr. at 596, 672, 727, 732).[8] Regarding the Plaintiff's abilities in concentrating, persisting or maintaining pace, the ALJ determined the Plaintiff had moderate limitations, again noting both consultative psychological examinations findings, as well as the Plaintiff's treating providers' observations throughout the relevant period (Tr. at 22-23, 390, 420, 588-590, 596, 600, 614, 637, 650, 680, 709, 727). Finally, as for adapting or managing oneself, the ALJ determined the Plaintiff had only a mild limitation, noting his ability to perform activities of daily living without assistance, including caring for his pets, preparing food, performing household tasks, driving, shopping and attending to his own personal care (Tr. at 23). Again, the ALJ cited the evidence in support of this conclusion, which included the findings during the consultative psychological examination with Ms. Bias, observations from the Plaintiff's treatment providers, as well as the Plaintiff's statements made in his Adult Function Reports (Tr. at 23, 281-283, 308-310, 589, 590, 600, 638, 641, 672, 686, 709, 727).

Based on the aforementioned "special technique", it is clear that the ALJ engaged in a proper consideration of the evidence as it related to the Plaintiff's mental impairments.

The RFC Assessment and Opinion Evidence:

---

Huntington Behavioral Health, dated April 28, 2021, February 22, 2021, January 6, 2021, March 8, 2022, and February 2, 2022, respectively.

[8] In addition to citing a few records provided by Huntington Behavioral Health, *supra*, footnote 7, the ALJ referenced the findings from another psychological examination performed on March 29, 2021, by Dr. Patsy Jackson, APRN, FNP-C.

To the extent that the Plaintiff contends the ALJ's RFC determinations, both mental and physical, were based on a product of her lay opinion because she did not adopt *in toto* the RFC assessments/opinions provided by Dr. Workman and Dr. Sertan (ECF No. 6 at 16, citing Tr. at 386-387, 674-677), the undersigned finds this argument also lacks merit.

Before discussing the medical opinions of record, it is worth noting that the RFC determination is the most a claimant can do despite his restrictions or limitations, and is *solely* an administrative assessment made by the adjudicator based on all the relevant evidence in the record – no medical opinion is required to fashion an RFC determination, but is considered with the overall evidence. See SSR 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. §§ 404.1545(a) and 404.1527(d); Felton-Miller v. Astrue, 459 Fed.Appx. 226, 230-231 (4th Cir. 2011); see also, Thaxton v. Colvin, No. 2:16-cv-00281, 2017 WL 359219, at *18 (S.D.W. Va. Jan. 3, 2017)(Eifert, M.J.), *report and recommendation adopted by*, 2017 WL 359201 (S.D.W. Va. Jan. 24, 2017); Jackson v. Comm'r, Social Sec., 2014 WL 1669105, at 2 (D. Md. Apr. 24, 2014)("an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment."); Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012)("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); Sullivan v. Comm'r of Soc. Sec., 2014 WL 6685075, at *4 (E.D. Cal. Nov. 25, 2014)("It is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source."); Gilmore v. Kijakazi, 2022 WL 2869047, at *8 (M.D.N.C. Jul. 21, 2022)("the ALJ labored under no requirement to fashion an RFC that exactly

matched Plaintiff's *testimony* or the *opinion* evidence."), *report and recommendation adopted by*, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022)(*emphasis* added).

SSR 96-8p also provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7.

Although the Plaintiff contends that the ALJ substituted her own lay opinion for those provided by his treating sources, this argument appears to hinge mainly on the basis that the ALJ simply did not adopt the Plaintiff's self-described greater restrictions. In this case, the ALJ properly applied Section 404.1520c, which emphasizes the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; moreover, an adjudicator is not bound to give any specific weight or deference to any medical provider's opinion, including those provided by treating sources. Id. § 404.1520c(a). Instead of assigning weight to medical opinions, the ALJ just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. § 404.1520c(b)(2). When discussing the finding about whether an opinion is persuasive, the ALJ need only explain how she considered the "the most important factors" of supportability and consistency. Id. § 404.1520c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. § 404.1520c(b)(2)-(3).

Regarding Dr. Workman's opinion, the ALJ explained why she found it unpersuasive: as noted *supra*, Dr. Workman opined the Plaintiff was totally disabled. The ALJ appropriately determined such issues are reserved for the Commissioner (Tr. at 27). See also, 20 C.F.R. § 404.1527(d)(opinions on some issues, including statements that you are disabled, "are not medical opinions"); see also, Id. 404.1527(d)(3)("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner.").[9] The ALJ explained that Dr. Workman's opinion that the Plaintiff was limited to less than sedentary work was unsupported by Dr. Workman's own treatment records which showed that the Plaintiff had normal movement in all extremities, intact sensation, and normal motor strength (Tr. at 27, 371, 374, 382). Further, the ALJ noted that Dr. Workman's opinion was not consistent with other evidence showing that the Plaintiff had normal sensation, normal gait and station, full motor strength, and a full range of motion in his back and extremities (Tr. at 27, 403, 452, 596, 600, 686, 713).

Regarding Dr. Sertan's opinion, the ALJ again noted that her findings were "not supported by her own examination findings that the Plaintiff had normal memory, a normal attention span and concentration ability, good or intact insight and judgment, and a logical, relevant, linear, and goal directed thought process or form" (Tr. at 27-28, 637, 640, 732). Additionally, the ALJ noted that Dr. Sertan's opinion conflicted with the other evidence of record as well, which showed the Plaintiff had

---

[9] A medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at § 404.1513(a)(5).

"an understandable and connected thought process, normal insight and judgment, good or normal memory, and normal persistence and pace" (Tr. at 28, 589, 590, 600, 604, 680, 686, 709).

In addition to considering and assessing the persuasiveness of the Plaintiff's treating providers, the ALJ discussed the prior decision from April 2020. (Tr. at 28-29) The ALJ acknowledged that when adjudicating a disability claim that involves a prior decision, the adjudicator must consider the prior findings and give them appropriate weight in light of all relevant facts and circumstances. See Albright v. Comm'r of Soc. Sec., 174 F.3d 473, 477–78 (4th Cir. 1999); Acquiescence Ruling (AR) 00-1(4), 2000 WL 43774, at *4 (Jan. 12, 2000). Under AR 00-1(4), an ALJ is to consider the following:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

2000 WL 43774, at *4. Applying this standard here, the ALJ noted that at the time of the prior decision, the Plaintiff had severe impairments of DM, obesity, hemochromatosis, right ankle arthritis, DVT, anxiety disorder, and depression, and that the Plaintiff could perform a range of medium exertion work (Tr. at 28-29, 78-85). The ALJ properly explained why she deviated from these prior findings, because "different [RFC] findings are warranted under the current evidence of record" (Tr. at 28). The ALJ explained that the limitation to medium work was an overestimate of the Plaintiff's abilities, but that some limitations included in the prior RFC were not supported by the evidence in the current record, particularly in light of the consultative examinations that occurred after the prior ALJ decision, such as the Plaintiff's full range of

motion witnessed by the consultative examiner (Tr. at 28- 29).

The ALJ also discussed the prior administrative medical findings, *supra*, which determined that the Plaintiff could perform medium exertion work, and the ALJ concluded that the findings were not persuasive given some inconsistency with the evidence of record (Tr. at 27). The ALJ found that the Plaintiff would be further limited in his functionality by the combined effects of his diabetes, right ankle dysfunction, degenerative disc disease, sleep apnea, history of deep vein thrombosis, and hemochromatosis (Tr. at 27, 357, 366, 369, 370, 381, 403, 597, 722, 725). Additionally, she explained that the State agency psychological experts were not persuasive given the combined effects of Plaintiff's symptoms including anger issues, nightmares, sleep disturbances, panic attacks, and concentration deficits (Tr. at 27, 637, 643, 649, 741, 744).

In short, the ALJ's RFC determination is not the product of her own lay opinion – she did render this determination by interpreting imaging or other evidence when she rejected the Plaintiff's self-described limitations and/or his treating providers' opined greater restrictions. The ALJ relied primarily on the medical record and other evidence from the relevant period and crafted an RFC based on the substantial evidence of record. Additionally, the ALJ complied with the Regulations with respect to consideration of all the Plaintiff's impairments in combination at step three, which is supported by substantial evidence.

Accordingly, the undersigned **FINDS** the ALJ's findings and conclusions as they relate to the step three analysis are supported by substantial evidence.

Finally, the undersigned **FINDS** that the Commissioner's final decision determining that the Plaintiff was not disabled from March 24, 2029 through the date of the decision is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (ECF No. 5), **GRANT** the Defendant's request to affirm the decision below (ECF No. 7), **AFFIRM** the final decision of the Defendant, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of

such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: March 21, 2024.



Omar J. Aboulhosn
United States Magistrate Judge